## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **SHANE MAESTAS, on Behalf of Himself and on Behalf of All Others Similarly Situated,** | § § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 1:23-cv-607** |
| **V.** | § § | **JURY TRIAL DEMANDED** |
| **AMAZON.COM SERVICES, LLC,** | § § § | |
| **Defendant.** | § | |

### PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

1.    This is a class action lawsuit brought by Plaintiff Shane Maestas ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members") to recover unpaid wages, penalties, and attorneys' fees and costs. Defendant Amazon.Com Services, LLC ("Amazon") implemented an illegal policy requiring its non-exempt workers to undergo a COVID-19 screening each shift without pay and a security screening without pay. The COVID-19 screening is a physical and medical examination that constitutes compensable time that was worked by the Plaintiff. Similarly, the security screening constitutes compensable time that was worked by the Plaintiff by failing to pay for this time worked, Amazon has violated New Mexico law. In addition to the Plaintiff, Amazon has failed to pay for the time spent undergoing COVID-19 screenings and security screenings by thousands of other workers across the State of New Mexico.  Members of the Class are referred to hereinafter as the "Class Members."

2.    Amazon's conduct violates the state laws of New Mexico because Amazon failed to pay all wages due as required by the under the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-22 et seq.  Plaintiff seeks all available relief under the NMMWA.  Plaintiff

brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and on behalf of the class of similarly situated workers.

## SUBJECT MATTER JURISDICTION AND VENUE

3.     This Court has jurisdiction over subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Under CAFA, this court has original jurisdiction over Plaintiff's Rule 23 class action claims because the matter in controversy is believed to exceed $5,000,000, and because Plaintiff and Defendant are citizens of different states. Moreover, the number of proposed class members in New Mexico is believed to exceed 100 individuals.

4.     Venue is proper in this District because a substantial portion of the events forming the basis of this suit occurred in this District.  In particular, Plaintiff worked in this District and was denied wages in this District.

5.     Amazon is subject to personal jurisdiction before this Court because it has purposefully availed itself of the privileges of conducting activities in the State of New Mexico and established minimum contacts sufficient to confer jurisdiction. Amazon does business in New Mexico, advertises in New Mexico, markets to New Mexico consumers, and the violations of the law forming basis of this lawsuit occurred in New Mexico. Further, Amazon maintains offices in New Mexico and employs New Mexico residents. Therefore, the assumption of jurisdiction over Amazon will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

6.     This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES AND PERSONAL JURISDICTION

7.      Plaintiff Shane Maestas is an individual who worked for Amazon in New Mexico.

8.      The "Class Members" are all current and former hourly paid employees of Amazon who underwent a COVID-19 screening during at least one week in New Mexico in the three-year period before the filing of the Original Complaint until final resolution of this Action.

9.      Defendant Amazon.com Services, LLC is a Delaware limited liability company with its principal place of business located in Seattle, Washington.  Defendant can be served with process by serving its registered agent Corporation Service Company at 110 E. Broadway St., Hobbs, NM 88240.

10.      At all material times, Amazon was and is legally responsible for the unlawful conduct, policies, practices, acts, and omissions as described and set forth in this Complaint, as the employer of Plaintiff and the Class Members.

11.      At all material times, Amazon has been governed by and subject to the NMMWA.

12.      At all material times, Amazon has been an employer within the meaning of N.M. STAT. ANN. § 50-4-21(B).

13.      At all material times, Plaintiff and the Class Members were employees of Amazon with the meaning of N.M. STAT. ANN. § 50-4-21(C).

## FACTS

14.      Amazon operates a sprawling international online retail shopping business that allows customers to order goods online and have those orders fulfilled and delivered through Amazon's expansive fulfillment network.

15.    Amazon's "fulfillment network is made up of state-of-the-art technology and a variety of building types and sizes to support processing orders, but it's truly [Amazon's] people who bring the magic of Amazon to life for our customers."

16.    Amazon operates innumerable warehouses, known as fulfillment centers and distribution centers, across the United States. Each of these warehouses employs hundreds, and often thousands, of hourly employees. Some warehouses pick, pack, and ship orders for Amazon's customers, while others sort already packed customer orders for faster delivery to final destinations.

17.    Plaintiff worked for Amazon as an hourly, non-exempt employee at the fulfilment center in Albuquerque, New Mexico. He was employed as a packer.  He worked from approximately December 2021 to March 2022.  He was paid an hourly rate of approximately $19.75 per hour.  His job duties included moving boxes, stacking packages, and loading boxes. Plaintiff primarily worked a schedule that was Wednesday through Saturday from 6pm to 6 am. He regularly worked more than 40 hours each week.

18.    Plaintiff worked with hundreds of other Amazon workers at the Albuquerque fulfillment center.

**PLAINTIFF AND CLASS MEMBERS WERE NOT PAID FOR ALL WORK TIME AS A RESULT OF COMPLETING COVID-19 SCREENINGS "OFF THE CLOCK"**

19.    The novel Coronavirus has infected over 100 million Americans and caused the death of over one million Americans. (*See* https://coronavirus.jhu.edu/us-map, last visited July 17,

2023).[1] Following the outbreak of the Coronavirus, Amazon implemented a company-wide policy requiring each of its hourly, non-exempt employees to undergo a physical and medical examination to check for symptoms of the Coronavirus each shift. This examination was imposed by Amazon as a requirement to work each shift. The examination was conducted on the premises of Amazon, was required by Amazon, and was necessary for each employee to perform his/her work for Amazon. Amazon did not pay employees for the time they spent undergoing the examination.  Amazon's conduct violates New Mexico law.

20.    Amazon operates fulfillment centers and distribution centers in New Mexico and across the country. These Amazon facilities are large warehouses that normally operate 24 hours per day. These Amazon facilities are the warehouses where Amazon stores the packages that are delivered to customers. Upon information and belief, Amazon employs more than 5,000 workers in New Mexico at distribution centers and fulfillment centers throughout the state.

21.    Amazon required Plaintiff to clock-in and clock-out each day.

22.    Following the outbreak of the Coronavirus, Amazon prevented Plaintiff from clocking in when they first arrived at Amazon's facility.  Instead, prior to allowing Plaintiff to clock in each day, Amazon required Plaintiff to undergo a physical and medical examination to screen for symptoms of COVID-19.

23.    Although the COVID-19 screening was required by Amazon, Amazon did not pay any of its employees, including Plaintiff, for the time spent undergoing the COVID-19 screening.

24.    As a direct result of Amazon's COVID-19 screening, Amazon did not pay Plaintiff

---

[1]    In New Mexico, the Coronavirus has infected nearly four million New Mexico residents, and has resulted in approximately 10,000 confirmed deaths. (*See* https://coronavirus.jhu.edu/region/us/New Mexico, last visited July 17, 2023).

and other Class Members for all hours they worked at Amazon's facilities.

25.     In particular, prior to the start of their shifts, Amazon employees were required to form a line at the entrance to the facility and to stand six feet apart.  Amazon employees were then called one-by-one to a checkpoint where the COVID-19 screening took place.  Each employee whose shift was set to begin was required to undergo a temperature check and to answer questions about his/her health. If the employee passed the examination, he/she was then given a mask to wear. After putting on the mask, the employee then walked to the next station where the employee was allowed to clock-in for the day.

26.     The amount of time it takes to wait in line and undergo the COVID-19 examination was approximately 10 minutes to 15 minutes on average. This amount of time could be longer depending upon the number of other Amazon employees in line for the COVID-19 screening.  The COVID-19 screening occurred each day at each Amazon facility in New Mexico and no Amazon employee could work without first passing the COVID-19 screening.

27.     This COVID-19 screening should have been paid by Amazon because it constitutes compensable time worked. During this time, Plaintiff and Class Members were subject to Amazon's control.

28.     Plaintiff and the Class Members were required to follow Amazon's instructions while awaiting and during the COVID-19 screening. Amazon required every employee to complete the COVID-19 screening and it was not optional. Indeed, the COVID-19 screening was required by Amazon and its employees were required to comply under threat of discipline, including possible termination.

29.     Additionally, Plaintiff and the Class Members were confined to the premises of

Amazon when they waited for the examination and during the examination.

30.     Moreover, Amazon compelled its employees to perform specific tasks during the examinations. They were required to answer questions, submit to have their temperature taken, and wear masks.

31.     In other words, Amazon directed, commanded, and restrained its employees during the COVID-19 examinations; prevented them from using that time effectively for their own purposes; and Plaintiff and the Class Members remained subject to Amazon's control during the examinations.

32.     The COVID-19 screenings were also necessary to the principal work performed by Plaintiff and the Class Members and were necessary to ensure a safe workplace. The COVID-19 examinations were also undertaken on Amazon's premises, were controlled and required by Amazon, and undertaken primarily for the benefit of Amazon.

33.     Indeed, Amazon required Plaintiff and the Class Members to undergo this screening for the purposes of overall safety in the Amazon facilities and to prevent Plaintiff and the Class Members from inadvertently and unintentionally infecting the Amazon facilities or Amazon products, and in turn, Amazon's customers. Likewise, the job duty of Plaintiff and the Class Members was to serve the customers of Amazon and the screening was necessary to ensure that Plaintiff and the Class Members could safely provide that service to Amazon's customers.

34.     The COVID-19 examinations were necessary to ensure that the virus did not infect the Amazon facilities or customers. The examinations were also necessary to ensure that the virus did not disrupt the work performed by Plaintiff and the Class Members or affect the business operations of Amazon. If Amazon did not have the COVID-19 screening, workers could

inadvertently or unintentionally bring the virus into the Amazon facilities causing a mass breakout of the virus infecting hundreds to thousands of other workers of Amazon. Plaintiff and the Class Members could not perform their work for Amazon if there was a mass breakout of the virus at the Amazon facilities. Furthermore, the COVID-19 virus directly affects the health of workers. If Plaintiff and the Class Members became infected with the virus, their health would suffer. Symptoms of the virus include fatigue, lack of strength, coughing, headaches, and other symptoms. Plaintiff and the Class Members could not perform their work for Amazon if they were infected with the virus.

35.    Moreover, the COVID-19 screenings were necessary to the principal activity and primary job duty performed by Plaintiff and the Class Members, which was to serve and assist Amazon customers receiving their purchased items. The COVID-19 screenings were necessary for Plaintiff and Class Members to perform their primary job duty for Amazon. If Amazon cancelled the COVID-19 screenings, the Amazon facilities could get contaminated with the virus, the items that Amazon sold could get contaminated with the virus, the customers could get infected, and other employees of Amazon could get infected. In that event, Amazon's business would be disrupted, and Plaintiff and Class Members would not be able to do their work. Therefore, the COVID-19 screenings were necessary to ensure that Plaintiff and Class Members could do their jobs for Amazon.

36.    The COVID-19 screenings were also necessary to the principal activity and primary job duty performed by Plaintiff and the Class Members because the COVID-19 screenings were necessary to ensure that Amazon workers could perform their work safely, to prevent contamination from the virus, and to keep the customers of Amazon safe. If employees became

infected with the virus, they would not be able to provide their services to Amazon. Moreover, if Amazon customers received packages that were infected with the virus, the customers would likely no longer use Amazon's services.

37.    Thus, the COVID-19 screenings were necessary for the Plaintiff and Class Members to do their work for Amazon and without the screenings, their ability to do their jobs would have been compromised. Plaintiff and the Class Members could not skip the screenings altogether without the safety or effectiveness of their principal activities being substantially impaired. The screenings prevented the COVID-19 virus from spreading through Amazon's facilities and infecting employees and products, thereby allowing Amazon employees to continue to work.

38.    Under these facts, the COVID-19 screenings were also for the benefit of Amazon and its customers. The COVID-19 screenings allowed Amazon's operations to continue and therefore, allowed Amazon to earn a profit. Similarly, the COVID-19 screenings benefited Amazon's customers by allowing them to receive products in a timely basis and to receive products that were not contaminated. Indeed, the COVID-19 screenings were conducted by Amazon with the intent for Amazon to benefit, to earn more profits, and to continue its business. In fact, Amazon's business substantially grew during the pandemic and it appears that the pandemic provided a windfall for Amazon's operations.

39.    The COVID-19 screenings were also primarily for the benefit of Amazon because Amazon's COVID-19 screening policy was intended to keep its fulfillment centers and distribution centers as safe of a workplace as possible given the circumstances of the global pandemic. Amazon's COVID-19 screening policy was also intended to ensure the safety of Amazon's

workers and to ensure that Amazon complied with the law. By making the workplace safe, Amazon increased the efficiency of Amazon's operations and allowed it to make billions in profits during the pandemic. Indeed, having business operations continue without interruption undoubtedly increased the profits of Amazon. Similarly, complying with all laws ensured Amazon could continue to operate and earn profits. Moreover, having employees who are healthy and able to perform their work ensures that Amazon can continue to operate and earn profits.

40.    The COVID-19 screenings were to ensure that the virus did not disrupt the work performed by the Plaintiff/Class Members or affect the business operations of Amazon. If Amazon facilities suffered an infection outbreak, Amazon would potentially have to find new employees or shut down its warehouses until it was safe to open again. Such an outbreak would harm Amazon directly and cause it to lose significant profits. Given this substantial risk to Amazon's business operations, Amazon primarily benefitted from the COVID-19 screenings.

**PLAINTIFF AND CLASS MEMBERS WERE NOT PAID FOR ALL WORK TIME AS A RESULT OF COMPLETING SECURITY SCREENINGS "OFF THE CLOCK"**

41.    Amazon required its employees in New Mexico to undergo mandatory security screenings without pay after they clock out following their meal breaks and after they clock out at the end of their shifts. Given the nature of the business, Amazon's facilities are secured by locked doors and metal detectors.

42.    During the security screening, Amazon required its employees to empty their pockets, empty their bags, remove all metal objects, and submit any personal items in their possession for inspection.

43.     They then walked through a metal detector and underwent a further search if any metal objects were detected.  After clearing the metal detector, Amazon employees were allowed to gather their belongings and put on their shoes, belts, and jackets.

44.     Given that they were not clocked in during this time, the security screenings were conducted without pay.  Indeed, this security screening lasted approximately five to 25 minutes per day and was uncompensated by Amazon.

45.     However, this time should have been compensated by Amazon.  The security screenings were required by Amazon, controlled by Amazon, and undertaken on Amazon's premises primarily for the benefit of Amazon's business.

46.     Specifically, during the security screenings, Amazon employees were subject to the control of Amazon.  Amazon employees were required to follow Amazon's instructions while awaiting and during the security screening.  The security screenings were required by Amazon and its employees were required to comply under threat of discipline, including possible termination.

47.     Additionally, Amazon employees were confined to the premises of Amazon when they waited for and during the screening.

48.     Moreover, Amazon compelled its employees to perform specific tasks during the examination.  They were required to empty their pockets, submit their bags for a search, and walk through a metal detector.

49.     If anything was detected, employees were required to undergo a second screening occurred.

50.    In other words, Amazon directed, commanded, and restrained its employees during the security screening; prevented them from using that time effectively for their own purposes; and they remained subject to Amazon's control during the examination.

51.    The security screenings were primarily for the benefit of Amazon because the security screening policy was intended to ensure that employees did not remove items without permission from the fulfillment centers and distribution centers and also to ensure that the workplace was as safe as possible. By ensuring that theft did not occur and by making the workplace safe, Amazon increased the efficiency of Amazon's operations and allowed it to make billions in profits.

52.    Under New Mexico law, the time spent undergoing the COVID-19 screening and the security screening is compensable time that should have been paid by Amazon.

53.    The NMMWA does not contain any provision similar to the Portal-to-Portal Act and the Portal-to-Portal Act was not incorporated into the NMMWA. *See Segura v. J.W. Drilling, Inc.*, 2015 N.M. App. LEXIS 72 (N.M. App. June 25, 2015) ("the exclusions in the Portal-to-Portal Act are completely absent from the MWA. There being no analogue in the MWA, the interpretations of the Portal-to-Portal Act in case law are unhelpful.").

54.    Amazon's illegal policies as described in this Complaint occurred at Amazon warehouses across New Mexico, including its fulfillment and distribution centers.

55.    In light of Amazon's conduct, Plaintiff and Class Members are owed significant unpaid wages and penalties.

56.    Plaintiff and Class Members are and were non-exempt employees.

57.    Plaintiff and Class Members are paid on an hourly rate basis.

58.    When they worked more than forty (40) hours in a workweek, Plaintiff and the Class Members were entitled to overtime pay.

59.    Although Amazon employs electronic "clocking-in" technology, this technology was not made accessible to Plaintiff and Class Members before the COVID-19 screenings or after the security screenings.

60.    As a result of Amazon's company-wide policies, Plaintiff and Class Members were not paid for all time worked each day and are owed significant unpaid wages.

61.    Amazon's method of paying Plaintiff and Class Members in violation of New Mexico law was not based on a good faith and reasonable belief that their conduct complied with the law. Amazon knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## CLASS ACTION ALLEGATIONS

62.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class, which is comprised of:

> **All current and former hourly paid employees of Amazon who underwent a COVID-19 screening in New Mexico in the three-year period before the filing of the Original Complaint to final resolution of this Action.**

63.    Numerosity:  The number of members in the Class is believed to exceed forty (40) and in fact, is likely to be in the thousands. This volume makes bringing the claims of each individual member of the Class before this Court impracticable. Likewise, joining each individual member of the Class as a plaintiff in this action is impracticable. Furthermore, the identity of the members of the Class will be determined from Amazon's records, as will the compensation paid to each of them. As such, a class action is a reasonable and practical means of resolving these

claims. To require individual actions would prejudice the Class Members and Amazon.

64.     Typicality:  Plaintiff's claims are typical of the Class Members' claims because like the members of the Class, Plaintiff were subject to Amazon's uniform policies and practices and were compensated in the same manner as others in the Class. Amazon failed to pay the Class Members for all hours they worked. Additionally, members of the Class worked substantially more than forty (40) hours in a week as non-exempt employees. Accordingly, Plaintiff and the Class Members have been uncompensated and/or under-compensated as a result of Amazon's common policies and practices which failed to comply with New Mexico law. As such, Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and all members of the Class sustained damages arising out of and caused by Amazon's common course of conduct in violation of law as alleged herein.

65.     Adequacy:  Plaintiff is a representative party who will fairly and adequately protect the interests of the Class Members because it is in their interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under New Mexico law. Plaintiff has retained attorneys who are competent in both class actions and wage-and-hour litigation. Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Class Members he seeks to represent.

66.     Commonality:  Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact and law include, but are not limited to:

> i.   Whether Plaintiff and the Class Members are entitled to compensation for the time spent in the COVID-19 screenings;
>
> ii.  The amount of time spent in the COVID-19 screenings;

iii.   Whether Plaintiff and the Class Members worked more than forty (40) hours in a workweek;

iv.   Whether Amazon failed to pay Plaintiff and the Class Members wages for all hours worked, including overtime hours; and

v.   The proper measure of damages sustained by Plaintiff and the Class Members.

67.   <u>Superiority</u>:  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit. Even in the event any member of the Class could afford to pursue individual litigation against a company the size of Amazon, doing so would unduly burden the court system. Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Amazon.

68.   A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court. By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class Members by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of the members of the Class is readily identifiable from Amazon's records.

69.     This type of case is well-suited for class action treatment because: (1) Amazon's practices, policies, and/or procedures were uniform; (2) the burden is on Amazon to prove it properly compensated its employees including any potential exemptions that might apply; and (3) the burden is on Amazon to accurately record hours worked by employees. Ultimately, a class action is a superior form to resolve the New Mexico claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Amazon to pay Plaintiff and the Class per applicable New Mexico laws.

## CAUSES OF ACTION

### Count One: Failure to Pay for All Hours Worked

70.     All previous paragraphs are incorporated as though fully set forth herein.

71.     The NMMWA entitles employees to compensation for "all hours worked" in a workweek.

72.     During all relevant times, Plaintiff and the Class Members were covered employees entitled to the above-described NMMWA protections.

73.     Plaintiff and the Class Members are not exempt from the NMMWA.

74.     Amazon has violated the NMMWA by failing to pay Plaintiff and the Class Members for all time associated with the mandatory COVID-19 screenings and security screenings.

75.     As a result of the foregoing conduct, as alleged, Amazon has failed to pay wages due under the NMMWA, thereby violating, and continuing to violate, the NMMWA.

76.     Plaintiff brings his claims on behalf of himself and all similarly situated employees pursuant to N.M. STAT. ANN. § 50-4-26(C)-(E) which authorizes a private cause of action for

16

Plaintiff and the Class Members to recover their unpaid wages plus interest, an additional amount equal to twice the unpaid or underpaid wages, as well as costs of court and attorneys' fees.

### Count Two: Failure to Pay Overtime

77.    All previous paragraphs are incorporated as though fully set forth herein.

78.    The NMMWA requires that employees receive overtime compensation not less than one and one-half times the employee's regular rate of pay for all hours worked over 40 in a workweek.

79.    During all relevant times, Plaintiff and the Class Members were covered employees entitled to the above-described NMMWA protections and worked more than 40 hours in a workweek.

80.    Plaintiff and the Class Members are not exempt from the NMMWA.

81.    Amazon has violated the NMMWA by failing to pay Plaintiff and the Class Members for all time associated with the mandatory COVID-19 screenings and security screenings.

82.    As a result of the foregoing conduct, as alleged, Amazon has failed to pay wages due under the NMMWA, thereby violating, and continuing to violate, the NMMWA.

83.    Plaintiff brings his claims on behalf of himself and all similarly situated employees pursuant to N.M. STAT. ANN. § 50-4-26(C)-(E) which authorizes a private cause of action for Plaintiff and the Class Members to recover their unpaid wages plus interest, an additional amount equal to twice the unpaid or underpaid wages, as well as costs of court and attorneys' fees.

## Count Three: Breach of Contract

84.     Plaintiff realleges and incorporates all allegations contained in the foregoing paragraphs.

85.     This claim is being pursued for those weeks in which the total number of hours worked by the Plaintiff and the Class Members was less than 40 hours.

86.     A valid and enforceable agreement existed between Plaintiff and Amazon, and the Class Members and Amazon, the terms and conditions of which include, but are not limited to, an agreement by Plaintiff and the Class Members to perform services for Amazon, and for Amazon to pay Plaintiff and the Class Members at an agreed hourly rate for all time in which they performed compensable work.

87.     Plaintiff and the Class Members duly performed under the agreement at Amazon's direction and for its benefit.

88.     Amazon failed and refused to perform its obligations under the agreement by failing to pay for all hours worked by the Plaintiff and Class Members.

89.     Plaintiff and the Class Members are entitled to recover damages from these breaches for the last three years.

90.     Plaintiff and the Class Members are entitled to attorney's fees for such breach of contract.

## Count Four: Quantum Meruit

91.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

92.     Plaintiff asserts that he and each New Mexico Class Member provided valuable services to Amazon, that Amazon accepted those services, and that Amazon had reasonable notice

18

that Plaintiff and the Class Members expected to be compensated for their services furnished to Amazon.

93.     The reasonable value of the services provided but not paid for by Amazon with respect to this Rule 23 claim is the difference between the number of hours said Class Members were paid in non-overtime weeks and the number of hours they actually worked, multiplied by each New Mexico Class Member's then-applicable hourly rate as identified on their pay records. Alternatively, the reasonable value of the service provided but not paid for by Amazon is the average hourly rate for similar employees in New Mexico.  However, in no event is the reasonable value of the services provided but not paid for by Amazon less than the applicable minimum wage rate in New Mexico for each hour worked.

### Count Five: Unjust Enrichment

94.     Plaintiff incorporates all allegations contained in the foregoing paragraphs.

95.     Amazon has been unjustly enriched at the expense of Plaintiff and the Class Members by failing to pay for work performed by Plaintiff and the Class Members.

96.     Amazon knowingly and/or intentionally accepted the benefit of the work performed by Plaintiff and the Class Members, despite its policy and practice of failing to pay Plaintiff and the Class Members for such work.  In particular, Amazon received the benefit of the labor and services provided by Plaintiff and the Class Members.

97.     Such conduct demonstrates bad faith and undue advantage on the part of Amazon.

98.     It would be unjust and inequitable for Amazon to retain the benefit of the unpaid work performed by Plaintiff and the Class Members in non-overtime weeks.

## JURY DEMAND

99. Plaintiff hereby demands a trial by jury on all issues.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all Class Members, pray that the Court:

1.  Certify that this action may proceed as a class action under Fed. R. Civ. P. 23;

2.  Appoint Plaintiff as Representative of the Class, and appoint his counsel as Class Counsel;

3.  Find and declare that Amazon's policies and/or practices described above violate New Mexico law;

4.  Award all unpaid wages, unpaid overtime, liquidated damages, penalties, interest, and/or restitution to be paid by Amazon for the causes of action alleged herein;

5.  Award costs, and expenses, including reasonable attorneys' fees and expert fees;

6.  Award pre-judgment and post-judgment interest, as provided by law; and

7.  Order such other and further legal and equitable relief the Court deems just, necessary and proper.

Date: July 17, 2023                          Respectfully submitted,

By: /s/ Don J. Foty
Don J. Foty
Texas Bar No. 24050022
HODGES & FOTY, L.L.P.
2 Greenway Plaza, Suite 250
Houston, TX 77046
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
Email: dfoty@hftrialfirm.com

AND

Anthony J. Lazzaro
Ohio Bar No. 0077962
*Will apply for admission Pro Hac Vice*
THE LAZZARO LAW FIRM, LLC
920 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113
Phone:  216-696-5000
Facsimile:  216-696-7005
Email: anthony@lazzarolaw.com

ATTORNEYS FOR PLAINTIFF AND CLASS
MEMBERS